UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

IN RE:

SAMARITAN ALLIANCE, LLC
d/b/a SAMARITAN HOSPITAL, et al.

DEBTORS                                                                                              CASE NO. 07-50735

SAMARITAN ALLIANCE, LLC
d/b/a SAMARITAN HOSPITAL                                                                PLAINTIFF

VS.                                                                                                         ADV. NO. 12-5009

COMMONWEALTH OF KENTUCKY,
CABINET FO R HEALTH AND FAMILY SERVICES, et al.                     DEFENDANTS

**MEMORANDUM OPINION**

THIS ADVERSARY PROCEEDING comes before the Court on plaintiff Samaritan Alliance LLC's ("Samaritan") Motion to Have Documents Declared Non-Privileged and defendant Commonwealth of Kentucky Cabinet for Health and Family Services' (the "Cabinet") Motion for Protective Order. For the reasons set forth below, the Court GRANTS Samaritan's Motion to Have Documents Declared Non-Privileged and DENIES the Cabinet's Motion for Protective Order.

FACTUAL AND PROCEDURAL BACKGROUND

This adversary proceeding, filed in February of 2012, arises from a dispute between Samaritan (doing business as Samaritan Hospital) and the Cabinet over the Cabinet's Medicaid reimbursement policies. Samaritan contends that these policies were illegal, that the Cabinet knew they were illegal, and that the Cabinet "launched a fraudulent scheme" when it used these policies as a basis for "falsely claiming it had overpaid Samaritan's outpatient reimbursements" and seeking "recoupment of these non-existent overpayments from Samaritan." Pl.s Compl. at 3. According to Samaritan, the Cabinet's "fraudulent scheme . . . resulted in a violation of the automatic stay, the

1

filing of false proofs of claim with Samaritan's bankruptcy estate, and the perpetration of frauds on Samaritan and on this Court." Pl.'s Resp. to Def.'s Mot. for Protective Order at 3.

The parties do not dispute the factual and procedural history of the instant discovery dispute. The Cabinet states that in this litigation it has "manually" reviewed approximately 3,000 pages of documents, Def.'s Resp. to Pl.'s Mot. to Have Docs. Declared Non-Privileged at 2, out of which it produced a total of 645 pages. Def.'s Mot. for Protective Order at 4. On October 16, 2012, the Cabinet served Samaritan with its Second Supplemental Response ("the Response") to Samaritan's first set of discovery requests. The Response contained fewer than 200 pages of documents and included five different sets of documents, sequentially Bates numbered and separated by lettered tabs. One of these tabbed sections, Tab D, consisted of thirty-eight pages of email messages and attachments. In one email string within Tab D—numbered SAMBKR0634-0644—cabinet employees discussed the legality of the Cabinet's reimbursement policies. The emails referenced the legal opinions of then Cabinet attorney Shea Luna ("Luna") regarding these policies..

On November 9, 2012, Samaritan issued a subpoena and a notice of deposition for Luna. On November 21, 2012, Counsel for the Cabinet ("Cabinet counsel") emailed Samaritan's counsel requesting that Samaritan agree not to seek any information protected by attorney-client privilege and that Samaritan withdraw its subpoena. Later that day, Counsel for Samaritan responded to Cabinet counsel in an email as follows:

> Samaritan contends that the information it has sought and will seek from the Cabinet, from Ms. Luna, and from others, falls within the crime or fraud exception to the attorney-client privilege. Samaritan further contends that to the extent that the information ever was privileged . . . any such privilege was waived. Substantial evidence supporting both contentions can be found in SAMBKR0634 to SAMBKR0644.

Pl.'s Mot. to Have Docs. Declared Non-Privileged Ex. A at 1.  Also on November 21, the Cabinet filed a motion to quash the subpoena issued to Luna, citing attorney-client privilege.  The Cabinet's motion to quash did not mention the emails at SAMBKR0634-0644.[1]

On December 3, 2012, Samaritan deposed Elizabeth Johnson, a former Medicaid Commissioner with the Cabinet.  At the deposition Samaritan included emails found at SAMBKR0634-0636 as an exhibit.  Samaritan's counsel then questioned Johnson about the emails and Johnson answered the questions posed to her.  Cabinet counsel was present at the deposition and did not object to the use of the emails as a deposition exhibit.  Cabinet counsel did repeatedly object to Samaritan's questioning of Johnson, but he did not state the basis for his objections, prevent Johnson from answering the questions, or act to terminate the deposition.  According to the Cabinet's Motion for Protective Order, Cabinet counsel believed that he lacked the authority to prevent Johnson from testifying because she was no longer a Cabinet Employee.

On December 4, 2012, Cabinet counsel sent an email to Samaritan's counsel stating that the Cabinet had "inadvertently produced information" it believed subject to a claim of privilege in the emails found at SAMBKR0634-0644.  Pl.'s Mot. to Have Docs. Declared Non-Privileged Ex. C at 1. Cabinet counsel wrote that he was "hereby notifying Samaritan of the inadvertent disclosure and to request that Samaritan return the documents."  *Id.*  Samaritan then sequestered the emails and on December 21, 2012 moved to have the disclosed emails at SAMBKR0634-0644 declared non-privileged.  In its motion, Samaritan argued that the Cabinet waived its attorney-client privilege as to these emails.

On December 28, 2012, the Cabinet moved for a protective order under Federal Rule of Civil Procedure 26(c) forbidding Samaritan from "inquiring into any areas protected by the attorney-client privilege."  Def.'s Mot. for Protective Order at 1.  The Cabinet based this motion on its stated fear

---

[1] The Court denied the Cabinet's motion to quash at a hearing held on December 10, 2012.  At that hearing, the Court directed the Cabinet to pursue its attorney-client privilege arguments by means of a motion for a protective order.

3

"that Samaritan will ask [former Cabinet attorney Luna] numerous questions about areas that are subject to a claim of attorney-client privilege." *Id.* at 2.

The Cabinet filed its response to Samaritan's motion on January 17, 2013. The Cabinet's response made two arguments: first, that waiver had not occurred because the Cabinet had diligently attempted to prevent and rectify an inadvertent disclosure; and second, that any waiver that occurred was limited in scope to the "narrow issue of law presented by the documents." Def.'s Resp. to Pl.'s Mot. to Have Docs. Declared Non-Privileged at 3. The Cabinet's response also clarified which emails the Cabinet claimed to be privileged—only those at SAMBKR0634-0635.

On January 18, 2013, Samaritan filed its response to the Cabinet's Motion for Protective Order. Samaritan's response charged that the Cabinet's disclosure was intentional. Thus, Samaritan argued, the Cabinet not only waived its privilege as to the disclosed emails; it also waived its privilege as to all undisclosed communications and information relating to the subject matter of the emails—that is, all communications and information relating to the legality of the Cabinet's disputed Medicaid reimbursement policies.

On January 25, 2012, the parties presented their arguments at a hearing on their motions, and the Court took the motions under submission. The following legal discussion will address the issues necessary to the adjudication of these motions.

## DISCUSSION

Samaritan's Motion to Declare Documents Non-Privileged and the Cabinet's Motion for Protective Order raise two issues: (1) whether the Cabinet's allegedly inadvertent disclosure of the emails at SAMBKR0634-0644 (the "Emails") resulted in a waiver of the attorney-client privilege as to these documents; and (2) whether the Cabinet is entitled to a protective order forbidding the plaintiffs from inquiring into areas protected by the Cabinet's attorney-client privilege.

*I.     Inadvertent Disclosure*

Federal Rule of Evidence 502(b) determines whether an inadvertent disclosure of privileged information or communications operates as a waiver of attorney-client privilege. Fed. R. Evid. 502(b). Rule 502(b) reads as follows:

> **(b) Inadvertent disclosure.** When made in a Federal proceeding or to a Federal office or agency, the disclosure does not operate as a waiver in a Federal or State proceeding if:
> (1) The disclosure is inadvertent;
> (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and
> (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

*Id.*

"The burden of showing that a privilege has not been waived [] falls on the party claiming the privilege." *GATX Corp. v. Appalachian Fuels, LLC*, CIV. A. 09-41-DLB, 2010 WL 5067688 (E.D. Ky. Dec. 7, 2010) (citing *Mainstay High Yield Corp. Bond Fund v. Heartland Indus. Partners, L.P.,* 263 F.R.D. 478, 480 (E.D. Mich. 2009). Thus "[t]he disclosing party has the burden to prove that the elements of FRE 502(b) have been met." *Peterson v. Bernardi*, 262 F.R.D. 424, 427 (D. N.J. 2009). *See also Kumar v. Hilton Hotels Corp.*, No. 08-2689 D/P, 2009 WL 1683479 at *2 (W.D. Tenn. June 16, 2009).

The Cabinet has failed to convince the Court that it took reasonable steps to prevent or rectify the Email disclosure. The circumstances of this case support a finding that the Cabinet waived its privilege as to the Emails.

The first circumstance that supports a finding of waiver is the timing of the Cabinet's request for the return of the Emails. A disclosing party's tardiness in requesting the return of disclosed documents supports a finding of waiver. *See e.g. Clarke v. J.P. Morgan Chase & Co.*, No. 08 Civ.

02400 (CM) (DF), 2009 WL 970940 at * 5 (S.D.N.Y. April 10, 2009). Here, the Cabinet acted too slowly. The Cabinet received an email from Samaritan's counsel on November 21, 2012 contending that the Cabinet had waived its attorney-client privilege and basing this contention on the disclosed Emails. Samaritan thus alerted the Cabinet as to the disclosure of the potentially privileged Emails. But the Cabinet did not request the return of the Emails until December 4, 2012—a day after they had been used as an exhibit in the Johnson deposition without objection. Given these circumstances, the Cabinet's delay in requesting the return of the Emails weighs toward a finding of waiver.

Next, the Court considers the Cabinet's treatment of the Emails at the Johnson deposition. A party's failure to object to the use of a disclosed document as a deposition exhibit supports a finding of waiver. *See Fed. Deposit Ins. Corp. v. Ernst & Whinney*, 137 F.R.D. 14, 19 (E.D. Tenn. 1991) ("Because the [disclosing party] allowed this document to be produced and marked as an exhibit to depositions, and because no claim of privilege was asserted at the time it was so produced and marked, the [court] finds that a waiver has occurred as to this document."). Cabinet counsel learned of the Email disclosure—and that the Emails may have contained privileged material—on November 21, 2012, but failed to object to the use of the Emails at SAMBKR0634-0636 as an exhibit at the December 3, 2012 Johnson deposition. Cabinet counsel did utter the word "objection" several times in response to Samaritan's questions, but these were objections to deposition questions, not to the use of the Emails as an exhibit.[2] Again, the circumstances support a finding of waiver.

The size of the Cabinet's document disclosures in this case is also relevant to the question of waiver. A party is more likely to have waived its privilege when the party's total document disclosure is relatively small and convenient to review. *See Clarke*, 2009 WL 970940 at *5 (describing document production of 532 pages as "not so large" that a single privileged email

---

[2] Furthermore, these objections were ineffective to protect any privilege, because the Cabinet failed to assert the privilege as the basis for its objections and—instead of exercising its right to halt the deposition or instruct Johnson not to answer—allowed the deponent Johnson to answer questions regarding allegedly privileged matters. *See Perrignon v. Bergen Brewing Corp.*, 77 F.R.D. 455, 461 (N.D. Cal. 1978). Whether or not Johnson was a current or former Cabinet of employee is of no bearing on this issue. *See id.*

"would have been difficult . . . to identify"). The Cabinet here has disclosed a total of only 645 pages of documents, and the Court does not consider this number of pages to be too great for a party as sophisticated as the Cabinet to effectively review. The fact that the Emails were contained in a tabbed section only thirty-eight pages long underscores the relative ease with which the Cabinet could have reviewed these documents. The limited amount of document production in this case further supports a finding of waiver.

Finally, the content of the Emails is another factor relevant to the question of waiver. Where the content of a disclosed document "is central to the claims made" in a case, the disclosing party "should identify that document at the outset of [] litigation." *See id.* Thus, disclosure of documents with content "central to the claims made" in a case suggests waiver. *See id.* The Emails here contain legal opinions regarding the validity of the Cabinet's reimbursement policies. Samaritan contends that these policies were illegal, that the Cabinet knew they were illegal, and that the Cabinet engaged in fraud when it used these policies as a basis for pursuing recoupment against Samaritan. Thus, it would seem that the content of the Emails is central to the claims made in this case; all the more reason why the Cabinet should have identified the Emails as potentially privileged. The Cabinet's disclosure of such important documents suggests that it waived any privilege that may have attached to them.

Based on consideration of these circumstances, the Court cannot find that the Cabinet took reasonable steps to prevent or rectify its disclosure as required by Rule 502(b)(2) and (3).[3] The Cabinet has thus failed to satisfy all the elements of Rule 502(b) and the Court finds that it has waived its attorney-client privilege as to the disclosed Emails.[4]

---

[3] Because the Court finds that the Cabinet failed to take reasonable steps to prevent or rectify the disclosure of the Emails under 502(b)(2) and (3), there is no need to consider whether the disclosure was "inadvertent" under 502(b)(1).

[4] Though both parties have argued as to the scope of this waiver, the Court will decline to address that issue at this time. Samaritan's motion asks only that the disclosed Emails be declared non-privileged; that motion can be granted without considering whether any privilege has been waived as to undisclosed matter. The issue of scope of waiver may be argued in the future if Samaritan seeks some piece of as-yet undisclosed information.

## II.    *The Cabinet's Motion for Protective Order*

Federal Rule of Civil Procedure 26(c)(1) states that "[t]he court may, for good cause, issue an order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. Pro. 26(c)(1). Under Rule 26(c)(1)(D) such an order may "forbid[] inquiry into certain matters, or limit[] the scope of disclosure to certain matters." Fed. R. Civ. Pro. 26(c)(1)(D).

"'The burden of establishing good cause for a protective order rests with the movant' and '[t]o show good cause . . . a movant must articulate specific facts showing "clearly defined and serious injury" resulting from the discovery sought . . . .'" *Hardy Oil Co., Inc. v. Nationwide Agribusiness Ins. Co.*, CIV. A. No. 11-75-JBC, 2011 WL 6056599 at *2 (E.D. Ky. Dec. 6, 2011.) (quoting *Nix v. Sword*, 11 Fed. Appx. 498, 500 (6th Cir. 2001) (internal citations omitted)). Thus, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Industries, Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quoting *Cippollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986)). This burden weighs no less where the movant claims the attorney-client privilege. "Where a party seeks a protective order on the grounds that the information sought is protected by the attorney-client privilege, that party has the burden of establishing the essential elements of the privilege." *G-I Holdings*, *Inc. v. Baron & Budd*, 199 F.R.D. 529, 533 (S.D.N.Y. 2001).

Here, the Cabinet has failed to show good cause why a protective order should be granted. According to its motion, the Cabinet "anticipate[s] that Samaritan will ask [former Cabinet attorney Shea Luna] numerous questions about areas that are subject to a claim of attorney-client privilege." Def.'s Mot. for Protective Order at 2. But Luna's deposition has yet to occur, and the Cabinet has provided no other information that might establish the elements of attorney-client privilege as to whatever topics Luna may discuss. The Court cannot enter a protective order based on such a slim record, and thus denies the Cabinet's Motion for Protective Order.

## CONCLUSION

For the forgoing reasons, the Court GRANTS Samaritan's Motion to have Documents Declared Non-Privileged and DENIES the Cabinet's Motion for Protective Order.

Joan A. Lloyd
United States Bankruptcy Judge
Dated: February 20, 2013