**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

IN RE:

SAMARITAN ALLIANCE, LLC
d/b/a SAMARITAN HOSPITAL, et al.

DEBTORS                                              CASE NO. 07-50735

SAMARITAN ALLIANCE, LLC
d/b/a SAMARITAN HOSPITAL                                      PLAINTIFF

VS.                                              ADV. NO. 12-5009

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND FAMILY SERVICES, et al.            DEFENDANTS

_____

**MEMORANDUM-OPINION AND PROPOSED FINDINGS OF FACTS AND
CONCLUSIONS OF LAW**

_____

THIS ADVERSARY PROCEEDING comes before the Court on Plaintiff Samaritan Alliance, LLC's ("Samaritan") Motion for Reconsideration and Defendant Commonwealth of Kentucky Cabinet for Health and Family Services' (the "Cabinet") Motion for Summary Judgment. For the reasons that follow, the Court (1) denies Samaritan's Motion for Reconsideration in part, as to Samaritan's claims related to allegations of fraud on the court and false proofs of claim; and (2) grants the Cabinet's Motion for Summary Judgment in part, as to those same claims related to allegations of fraud on the court and false proofs of claim. Finally, the Court will (3) submit proposed findings of facts and conclusions of law recommending that Samaritan be granted relief on its claims of Medicaid underpayment in the amount of $340,397.98.

1

## FACTUAL BACKGROUND

Samaritan operated a hospital in Fayette County, Kentucky. The Cabinet is a state agency charged with implementing the Federal Medicaid Program in Kentucky. Plaintiff entered into a Medicaid Provider Agreement with the Cabinet. The Agreement provided that the Cabinet would reimburse Samaritan for Medicaid services provided at rates governed by state and federal statutes and regulations.[1]

Samaritan alleges that beginning in 2003 the Cabinet misapplied the state regulation governing reimbursements for certain outpatient services, thus substantially underpaying Medicaid reimbursements due to Samaritan. Samaritan initiated administrative appeals of its reimbursements for the rate years beginning July 1, 2004, 2005, and 2006, respectively. According to Samaritan, the Cabinet has not responded to those appeals.

The Cabinet does not now deny that it failed to apply the state regulation governing reimbursements (the "Regulation"), the then extant version of 907 K.A.R. 1:015. The Cabinet's briefs to the Court in this action blame the difficulties between Samaritan and the Cabinet on a discrepancy between the Regulation and Kentucky's Medicaid State Plan (the "State Plan"). The Cabinet processed reimbursements according to the State Plan, not according to the Regulation. The Cabinet states that it feared a failure to process reimbursements according to the State Plan would result in the loss of federal matching funds and that it believed that the Regulation may have been preempted by federal law.

On April 11, 2007, the Cabinet sent a decision letter to Samaritan.[2] The decision letter stated

---

[1] *See also Samaritan Alliance, LLC v. Commonwealth of Ky., Cabinet for Health & Family Servs.* (*In re Samaritan Alliance, LLC*), Bankr. Case No. 07-50735, Adv. Proc. No. 08-5098, 2009 WL 939578 (Bankr. E.D. Ky. Mar. 16, 2009); *Commonwealth of Ky., Cabinet for Health & Family Servs. v. Samaritan Alliance, LLC*, No. 2012-CA-00745-MR, 2014 WL 685479 (Ky. Ct. App. Feb. 21, 2014).

[2] The decision letter was filed in Adversary Proceeding 08-5098 as Exhibit A to Samaritan's Complaint.

that the Cabinet had determined that Samaritan owed the Cabinet $241,687 for Medicaid outpatient reimbursement overpayments. The letter went on to state that Samaritan had thirty days from receipt to appeal the reimbursement determination pursuant to the state regulation governing such appeals, 907 K.A.R. 1:671.

Five days later, on April 16, 2007, Samaritan filed its Chapter 11 bankruptcy case in this Court.[3] The Court approved Samaritan's Amended Plan of Orderly Liquidation and Distribution on November 9, 2007.

Samaritan responded to the Cabinet's decision letter on May 25, 2007, after the 907 K.A.R. 1:671 thirty-day deadline had expired.[4] On that date, Samaritan attorney Stephen R. Price wrote a letter (the "Price Letter")[5] to the Cabinet in which he stated: "The Hospital is appealing the failure of the Department for Medicaid Services ("DMS") to process and pay for outpatient Medicaid services in compliance with the outpatient reimbursement regulation, 907 KAR 1:015; and its subsequent failure to settle certain claims to cost at year end as required by the regulation." (Price Letter, at 1). The Price Letter accused the Cabinet of improperly processing claims and underpaying Samaritan in violation of the Regulation. (*Id.* at 2).

On June 20, 2007, the Cabinet informed Samaritan that it had reviewed Samaritan's May 25, 2007 letter, and that it was denying Samaritan's attempt to appeal the Cabinet's April 11 determination as untimely. Samaritan requested an administrative appeal of the denial, and the case was assigned to the Cabinet's Administrative Hearings Branch. The Cabinet then moved to dismiss Samaritan's appeal of the Cabinet's determination as untimely. On October 4, 2007, the Cabinet's Hearing Officer issued an order recommending that Samaritan's appeal be dismissed as untimely.

---

[3] Under 11 U.S.C. § 108(b), Samaritan's bankruptcy filing should have served to extend its time period in which to initiate an appeal of the Cabinet's reimbursement determination by sixty days, but no party has raised this issue thus far.

[4] The letter was sent within the extended sixty-day time period under 11 U.S.C. § 108(b) and was therefore timely as a matter of law.

[5] The Price Letter was filed in Adversary Proceeding 08-5098 as Exhibit B to Samaritan's Complaint.

Samaritan filed exceptions to the Hearing Officer's order.  Nevertheless, on January 13, 2008 the Cabinet's Secretary entered a final order dismissing Samaritan's appeal as untimely and adopting the Hearing Officer's recommendation in its entirety.

On February 15, 2008, Samaritan filed a complaint against the Cabinet in the Franklin County Circuit Court (the "State Court Complaint").[6]  The State Court Complaint alleged, among other things, breach of contract, violation of Samaritan's constitutional and civil rights, and violation of relevant federal statutes.  The State Court Complaint also constituted a petition for appeal of the Final Order of the Cabinet's Secretary dismissing Samaritan's appeal of the reimbursement determination as untimely.  According to the State Court Complaint: "The Cabinet deliberately misapplied 907 KAR 1:015 when reimbursing the Hospital for outpatient services provided Medicaid patients so as to significantly and substantially underpay the Hospital."  (State Court Complaint, at 12).  On August 29, 2009, at oral argument in Franklin County Circuit Court, Samaritan requested the court delay ruling to allow Samaritan to bring an adversary proceeding in this Court for determination of whether the Cabinet had violated the bankruptcy automatic stay.

On October 15, 2008, Samaritan filed a Complaint for Declaratory Judgment in this Court in adversary proceeding 08-5098.  The complaint alleged that the bankruptcy automatic stay under 11 U.S.C. § 362 tolled the filing deadline for Samaritan to appeal the Cabinet's reimbursement determination, and that the Cabinet Secretary's Final Order dismissing Samaritan's complaint as untimely was in violation of the automatic stay.  Samaritan's complaint described the procedural history of the Franklin Circuit Court case up to that point and informed the Court that Samaritan had appealed the Cabinet Secretary's final order.  Samaritan filed the determination letter, the Price Letter, the Cabinet Secretary's final order, and the State Court Complaint as exhibits.

The parties then filed opposing motions for summary judgment.  The Cabinet's summary judgment motion argued that the Cabinet's actions constituted a recoupment exempt from the automatic stay and that the Cabinet had a "right to recoup overpayment."  (Cabinet's Resp. to Mot.

---

[6] The State Court Complaint was filed in Adversary Proceeding 08-5098 as Exhibit C to Samaritan's Complaint.

4

for Summ. J.and Cross-Mot. for Summ. J. at 3, Adv. Proc. 08-5098, ECF 11).  Samaritan argued that the Cabinet's determination constituted a demand for reimbursement, not recoupment, and asked that the Cabinet Secretary's final order be declared void and without effect.  Samaritan's memorandum in support of its summary judgment motion did not dispute the existence of an overpayment.[7]

On March 16, 2009, the Court issued a Memorandum Opinion that granted summary judgment in favor of the Cabinet.  The Court stated: "The requirements to be met for recoupment to be allowed are that 'an overpayment must have been made, and both the creditor's claim and the amount owed to the debtor must have arisen from a single contract or transaction.' " *Samaritan Alliance, LLC,* 2009 WL 939578 at *2 (citing *In re Dist. Mem'l Hosp. of S.W. North Carolina, Inc.*, 297 B.R. 451, 454 (Bankr. W.D. N.C. 2002)).  The Court went on to find that the Cabinet's actions did not violate the automatic stay.

The Court's opinion made no statement as to the validity of the Cabinet's overpayment determination.  Samaritan did not appeal the Court's decision.  The Cabinet obtained $86,960.96 in distributions from Samaritan's bankruptcy estate.

During the course of discovery in Samaritan's state court action, Samaritan obtained internal Cabinet e-mails that, according to Samaritan, indicate that the Cabinet believed it had underpaid Medicaid providers when it sent the April 11, 2007 letter claiming an overpayment.

Samaritan initiated this adversary proceeding on February 22, 2012.  In its complaint, Samaritan alleges that the Cabinet underpaid Samaritan and obtained summary judgment in the 2008 adversary proceeding by means of fraud on the court.  Based on this allegation, Samaritan asks this Court for a number of forms of relief, as follows:

---

[7]At the April 28, 2014 hearing held on the summary judgment motion now before the Court, counsel for Samaritan stated that Samaritan declined to contest the existence of an overpayment on summary judgment in the 2008 adversary proceeding because it was relying on another forum, Franklin County Circuit Court, to determine the validity of the alleged overpayment.

A. An Order requiring the Cabinet to disgorge the **$86,960.96** in distributions it
fraudulently obtained in Samaritan's bankruptcy, with interest;

B. An Order designating the Cabinet's Claims (POC 313 and 314) as being
Disputed Claims as such term is defined under the Plan;

C. An order disallowing the Cabinet's Claims (POC 313 and POC 314);

D. A judicial declaration setting aside the March 16, 2009 Summary Judgment
issued in Adv. No. 08-5098 because of the Cabinet's fraud on the court;

E. A judicial declaration that the Cabinet's dismissal of Samaritan's 2005 appeal
premised on the Cabinet's April 11, 2007 Fraudulent Recoupment Letter constituted
a violation of the automatic stay;

F. An award of damages, sanctions, costs, expenses, and reasonable attorneys' fees
under 11 U.S.C. § 105 and against the Cabinet for the Cabinet's violation the
automatic stay;

G. An award of sanctions, costs, expenses, and reasonable attorneys' fees under 11
U.S.C. § 105 and against the Cabinet for its fraud on the Court in a sum
proportionate to the Cabinet's culpability and proportionate to the damages flowing
from the Cabinet's fraudulent acts and omissions;

H. An award of the costs, expenses and reasonable attorneys' fees Samaritan has
incurred and continues to incur in this adversary proceeding and in Samaritan's
Chapter 11 Case No. 07-50735, as well as those it incurred in Samaritan's prior
adversary proceeding against the Cabinet, Adv. No. 08-5098; and,

I. For an award of all other legal and equitable relief to which Samaritan is
shown to be entitled.

(Pl.'s Compl. at 19, ECF No. 1).

During discovery, Samaritan sent the Cabinet a number of requests for admission.  The

Cabinet responded with several relevant admissions regarding its liability under the applicable state

reimbursement regulation, 907 K.A.R. 1:015.  According to the Cabinet, under 907 K.A.R. 1:015

the Cabinet's properly calculated liability is as follows: (1) it overpaid Samaritan by $40,124 in

2004, (2) overpaid by $62,909.02 in 2005, and (3) underpaid by $79,763 in 2006.  This results in

a net overpayment to Samaritan of $23,270.02 for those three years.  The Cabinet has also admitted

that, in addition to the above figures, it received a payment from Samaritan for $377,320 on August

26, 2005 and made a payment to Samaritan of $13,652, resulting in a net payment of $363,688.

On October 2, 2013, Samaritan filed a motion for summary judgment.  According to

Samaritan, the Cabinet committed fraud on the court in the 2008 adversary proceeding by asserting

a right to recoup an overpayment when it knew that no overpayment had been made.  Samaritan

cited the internal cabinet emails as proof of the Cabinet's knowledge.  Samaritan argued that in

2007, when the Cabinet asserted a right to recoup overpayments, it in fact owed approximately

$340,000 to Samaritan due to underpayments.  Furthermore, Samaritan argued that the Cabinet had

admitted this underpayment during discovery.  In its response to Samaritan's motion for summary

judgment, the Cabinet disputed Samaritan's fraud on the court allegation and argued that principles

of res judicata estopped Samaritan from undoing the 2008 adversary proceeding.  It also informed

the Court that it had decided to withdraw its proofs of claim and return the distributions it received

from Samaritan's estate as a show of good faith.[8]

The Court denied Samaritan's summary judgment motion on January 28, 2013.  The Court's

order stated:

> The Motion requests a number of forms of relief based on the theory that in
> Adversary Proceeding No. 08-5098 Defendant Commonwealth of Kentucky Cabinet
> for Health and Family Services (the "Defendant") committed fraud on the court by
> asserting legal rights to which the Defendant knew it was not entitled under
> Kentucky law. Under current case law, the doctrine of fraud on the court does not
> embrace the assertion of "erroneous legal contention[s]." *Oxxford Clothes XX, Inc.
> v. Expeditors Int'l of Washington, Inc.*, 127 F.3d 574, 578 (7th Cir. 1997).  Given
> the status of the case law on this topic, the Court concludes that Summary Judgment
> would be inappropriate at this time.

(Order, ECF No. 78).

On February 25, 2014, Samaritan filed its Motion to Reconsider the Court's Order Denying

Summary Judgment.  The Cabinet filed its own Motion for Summary Judgment on March 27, 2014.

---

[8] On November 11, 2013, the Cabinet filed a withdrawal of its Proofs of Claims (313, 314, and 315).
According to the Cabinet, "[t]he voluntary withdrawal of these proofs of claim does not constitute
an admission that the proofs of claim were improperly filed or that the Cabinet was otherwise not
entitled to receive distributions pursuant to these proofs of claim.  This is a voluntary withdrawal
made in the spirit of good faith and compromise." (Notice Withdrawing Proof of Claim at 1, Bankr.
Case. No. 07-50735, ECF No. 1034).  On March 11, 2014, the parties filed, and the court approved,
an agreed order in which the Cabinet agreed to return the distributions it received from Samaritan's
bankruptcy estate.  (Agreed Order for the Return of Funds to Samaritan's Bankr. Estate at 1, Bankr.
Case. No. 07-50735, ECF No. 1037).

The Cabinet argued that, as a matter of law, the Cabinet did not procure the 2008 adversary proceeding judgment by fraud on the court. The Cabinet further argued that all other forms of relief requested by Samaritan were moot because the Cabinet withdrew its proofs of claim and returned the $86,960.96 of distributions to the bankruptcy estate.

The Court heard oral argument on the Motion to Reconsider and the Motion for Summary Judgment on April 28, 2014. At oral argument, the parties largely repeated the contentions put forth in their briefs. In addition, Samaritan's counsel stated that the allegations in its complaint were broad enough to warrant a judgment in Samaritan's favor even if Samaritan's fraud on the court claim was unsuccessful. Samaritan's counsel explained that, despite the return of the distributions, the Cabinet still owed Samaritan approximately $340,000 caused by underpayments for Medicaid services. According to Samaritan's counsel, even if the Court held that no fraud on the court had occurred, the Court could still award Samaritan relief based on the $340,000 owed to Samaritan by the Cabinet.

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Samaritan's claims regarding the filing of false proofs of claim by the Cabinet can be considered core under 28 U.S.C. § 157(b)(2)(B). Similarly, this Court possesses core jurisdiction over Samaritan's fraud on the court claims. *See In re Schlichtmann*, 375 B.R. 41, 90 (Bankr. D. Mass. 2007) ("[T]his Court has core jurisdiction over [debtor's] demand for damages for fraud on the court insofar as it concerns fraud perpetrated in the bankruptcy court itself, in [debtor's] bankruptcy case.").

The Court lacks core jurisdiction over Samaritan's claim for relief for Medicaid underpayments. This claim is based on the Medicaid Provider Agreement between the parties and the state regulations governing Samaritan's participation in the Medicaid program. The Cabinet has withdrawn all its proofs of claims, and is no longer a creditor. This is therefore the kind of state law claim against a non-creditor that is treated as a non-core claim under 11 U.S.C. § 157(c)(1). *See Orion Pictures Corp. v. Showtime Networks* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1102 (2d Cir. 1993) (holding that breach of contract actions by a debtor against a party to a prepetition contract

who is a non-creditor are non-core).  Furthermore, this Court lacks the constitutional authority to enter a final order in a state law action against a non-creditor, and this lack of constitutional authority cannot be waived.  *Waldman v. Stone*, 698 F.3d 910, 918 (6th Cir. 2013).  The Court's disposition of this claim will therefore constitute a non-final proposed findings of fact and conclusions of law under 11 U.S.C. § 157(c)(1).

## SUMMARY JUDGMENT STANDARD

This Court has previously described the standard to be employed in evaluating a motion for summary judgment:

> The purpose of a motion for summary judgment is to determine if genuine issues of material fact exist to be tried.  *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir.1978).  The party seeking summary judgment bears the initial burden of asserting that the pleadings, depositions, answers to interrogatories, admissions and affidavits establish the absence of genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989).  The burden on the moving party is discharged by a "showing" that there is an absence of evidence to support a non-moving party's case.  *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548.  Summary Judgment will be appropriate if the non-moving party fails to establish the existence of an element essential to its case, and on which it bears the burden of proof.  *Celotex Corp.*, 477 U.S. at 322. Thus, the ultimate burden of demonstrating the existence of genuine issues of material fact lies with the nonmoving party.  *Lashlee*, 570 F.2d at 110-111.

*Johnson v. Williams* (*In re Williams*), 490 B.R. 236, 238-39 (Bankr. W.D. Ky. 2013).

## DISCUSSION

Samaritan requests a number of items of relief.  These requests for relief fall into three categories: (1) requests for relief involving the Cabinet's proofs of claim and distributions related to the proofs of claim; (2) requests for relief based on the allegation that the Cabinet committed fraud on the court during the 2008 adversary proceeding; and, finally, (3) the request for relief fully enunciated at the April 28, 2014 oral argument: that, even without a fraud on the court

determination, the Cabinet owes Samaritan approximately $340,000.  The Court will address each of these categories in turn.

I.      Relief Involving the Cabinet's Proofs of Claim

Samaritan has requested that the Court order the disallowance of the Cabinet's proofs of claim, designate them as disputed, and order the disgorgement of the Cabinet's distributions from Samaritan's bankruptcy estate.  These requests for relief are moot.  A case becomes moot when the issues presented are no longer live or parties lack a legally cognizable interest in the outcome. *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001).  The Cabinet has already withdrawn its proofs of claim and agreed to return the $86,960.96 of distributions.  In essence, as far as the proofs of claim and distributions are concerned, the Cabinet has given Samaritan the relief Samaritan is requesting from the Court.  Therefore, the Court will grant Summary Judgment in favor of the Cabinet as to these issues.

II.     Fraud on the Court:

Samaritan has requested a number of forms of relief predicated on the allegation that the Cabinet's attorneys obtained a favorable judgment in the 2008 adversary proceeding through fraud on the court.  Samaritan asks the Court to set aside the judgment from the 2008 adversary proceeding and to declare–in contravention of that judgment–that the Cabinet violated the automatic stay.  Samaritan also asks for an award of various costs and sanctions, again based on the Cabinet's alleged fraud on the court.

The Sixth Circuit has described fraud on the court as conduct:

(1) On the part of an officer of the court;

(2) That is directed to the "judicial machinery" itself;

(3) That is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth;

10

(4) That is a positive averment or is concealment when one is under a duty to disclose;

(5) That deceives the court.

*Workman v. Bell*, 245 F.3d 849, 852 (6th Cir. 2001) (citing *Demjanjuk v. Petrosky*, 10 F.3d 338, 348 (6th Cir. 1993)).

   Fraud on the court provides a basis for overturning judgments otherwise protected under principles of res judicata, *see, e.g.*, Fed. R. Civ. P. 60(d)(3) (recognizing court's power to "set aside a judgment for fraud on the court"), and so "must be balanced against the necessity for finality of court judgments; thus, only actions that actually subvert the judicial process can be the basis for upsetting otherwise settled decrees." *Demjanjuk*, 10 F.3d at 352.  Indeed, because fraud on the court represents an exception to generally applicable res judicata principles, courts have read the term narrowly so as to apply only to conduct that "harms the integrity of the judicial process" and that represents a "grave miscarriage of justice."  *Appling v. State Farm Mut. Auto Ins. Co.*, 340 F.3d 769, 780 (9th Cir. 2003) (quoting *United States v. Beggarly*, 524 U.S. 38, 46 (1998)). "[F]raud on the court must constitute 'egregious misconduct . . . such as bribery of a judge or jury or fabrication of evidence by counsel.' "  *Herring v. United States*, 424 F.3d 384, 390 (3d Cir. 2005) (quoting *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 538 F.2d 180, 195 (8th Cir. 1978), *abrogation on other grounds recognized by Briscoe v. County of St. Louis, Missouri*, 690 F.3d 1004, 1011 (8th Cir. 2012)).

   Given this narrow reading of "fraud on the court," courts have excluded from that concept various types of misconduct that, though serious, do not sufficiently harm the integrity of the judicial process so as to rise to the level of fraud on the court.[9]  One principle that separates fraud on the court from lesser misconduct is the idea that "[f]raud in the legal process is not actionable if it is incapable of obstructing the opposing litigant."  *Oxxford Clothes XX, Inc. v. Expeditors Int'l of Washington, Inc.*, 127 F.3d 574, 578 (7th Cir. 1997) (citing cases).  In other words, a

---

[9] For example, "non disclosure by itself does not constitute fraud on the court.  Similarly, perjury by a party or witness, by itself, is not normally fraud on the court."  *Levander v. Prober* (*In re Levander*), 180 F.3d 1114, 1119 (9th Cir. 1999) (internal citations omitted).

misrepresentation can only constitute fraud on the court if it denies the opposing litigant the ability to press its rights in litigation.  This means that "[a] lie uttered in court is not a fraud on the liar's opponent if the opponent knows it's a lie yet fails to point this out to the court."  *Id.*  Similarly, a party does not commit fraud on the court merely by making an "erroneous legal contention."  *Id.*  This is because such a contention is "out in the open;" it is not predicated on private, concealed information but on facts and legal rules in the possession of the opposing litigant.  *Id.*  In such a scenario, the false contention does not deny the opposing litigant the ability to press its rights because the opposing litigant can challenge the contention in court.

Here, even if the Court were to assume that the Cabinet's claim of an overpayment was a deliberate misrepresentation, such conduct would not constitute fraud on the court.  Whether or not an overpayment existed was not a matter of private information that the Cabinet could have concealed from Samaritan.  The contention of overpayment was based on facts (the services and payment history between the parties) and law (the relevant regulations and other legal authorities) that were well known to Samaritan.  Samaritan was thus in a perfect position to challenge the Cabinet's contention.  In fact, Samaritan had already done exactly that in another forum.  As is made clear by the Price Letter and Samaritan's State Court Complaint, Samaritan had already examined the Cabinet's overpayment claim and was disputing that claim in state court even before the 2008 adversary proceeding began.  The only thing that has changed since then is that Samaritan now has emails from the Cabinet that may support Samaritan's position on the overpayment/underpayment issue and may suggest that the Cabinet knew it had underpaid.  This is not reason enough to disregard res judicata principles and undo a five year old judgment.  Even if Samaritan's allegations are true, no fraud on the court occurred.

Samaritan argues that the Cabinet's claim of overpayment constituted fraud on the court because it was a misrepresentation of fact, not law.  But here an overpayment/underpayment determination is not purely factual.  Whether an overpayment or underpayment exists within Kentucky's Medicaid scheme requires consultation with legal authority: the relevant state regulations governing Medicaid reimbursements.  That legal authority is then applied to the facts at hand: the history of payments and services provided.  Application of law to facts leads to the

conclusion that one party overpaid or underpaid.  This is the same process–application of law to facts–that lawyers apply to any situation to generate a legal claim.

More importantly, the relevant distinction here is not whether a misrepresentation involves facts or law, but whether or not the representation was capable of obstructing the opposing litigant. Attorneys should not lie or otherwise violate their duty of candor under the Rules of Professional Responsibility.[10]  But while an attorney's lies may subject the attorney to sanctions or discipline, they do not automatically constitute fraud on the court.  To constitute fraud on the court, such lies must also be capable of obstructing an opposing litigant.  That does not occur in a case such as this one where the opposing litigant was in a position to challenge the alleged misrepresentation but chose not to do so.  The Court will therefore grant Summary Judgment to the Cabinet as to those claims related to fraud on the court.

III.   Money Owed to Samaritan for Medicaid Underpayments

Samaritan argues that it has shown itself to be entitled to an award of approximately $340,000 for Medicaid underpayments during 2004, 2005, and 2006.  As mentioned above, this claim is based on the Medicaid Provider Agreement between the parties and the state regulations governing Samaritan's participation in the Medicaid program.  The Cabinet has withdrawn all its proofs of claim, and is no longer a creditor.[11]  Therefore, this is the kind of state law claim that is treated as a non-core claim under 11 U.S.C. § 157(c)(1).  *See Orion Pictures Corp. v. Showtime Networks* (*In re Orion Pictures Corp.*), 4 F.3d 1095, 1102 (2d Cir. 1993) (holding that breach of

---

[10] It should be noted that attorneys do not commit fraud on the court merely by violating their ethical obligation to acknowledge contrary authority.  *See In re Rebeor*, 89 B.R. 314, 324 n.7 (Bankr. N.D. N.Y. 1988)  ("[Movant's] allegation that the Debtor misled or committed fraud on the Court in neglecting to acknowledge contrary authority . . . is without merit. At most, this conduct, if true, might give rise to a breach of ethics.").

[11] The Court also notes that the Cabinet has waived its right to a jury trial by failing to withdraw its proofs of claim prior to the filing of this adversary proceeding.  *See Seven Counties Servs., Inc. v. NextGen Information Systems, Inc.*, CV NO. 3:14CV-330-S, ECF No. 18 at 4 (W.D. Ky. filed Aug. 12, 2014) (citing *Kerr v. Cressaty Metals, Inc.* (*In re Christou*), 448 B.R. 859, 862 (Bankr. N.D. Ga. 2011)).

contract actions by a debtor against a party to a prepetition contract who is a non-creditor are non-core). Furthermore, the Court lacks the constitutional authority to enter a final order in a state law action against a non-creditor, and this lack of constitutional authority cannot be waived. *Waldman v. Stone*, 698 F.3d 910, 918 (6th Cir. 2013). The following section will constitute a non-final proposed findings of fact and conclusions of law to be submitted to the district court.

In order to determine the substantive issue between Samaritan and the Cabinet–who overpaid or underpaid, and by how much–the Court must determine the parties' liabilities under the governing state Medicaid regulations. In this task the Court can turn to the work that has already been done by the Cabinet during discovery. The Cabinet has produced admissions in which, under the governing regulation, 907 K.A.R. 1:015, it has calculated its liability as follows: (1) It overpaid Samaritan by $40,124 in 2004, (2) overpaid by $62,909.02 in 2005, and (3) underpaid by $79,763 in 2006. This results in a net overpayment to Samaritan of $23,270.02 for those three years. The Cabinet has also admitted that, in addition to the above figures, it received a payment from Samaritan for $377,320.00 on August 26, 2005 and made a payment to Samaritan of $13,652.00, resulting in a net payment of $363,688. All that is left to do is to net out these sums. Taking the August 26, 2005 payment of $377,320 and subtracting the $13,652 payment to Samaritan and the $23,270.02 overpayment figure results in a net underpayment amount of $340,397.98.

Though the Cabinet's admissions appear to make its liability readily apparent, and there is no factual dispute regarding the payments made by the parties, the Cabinet has raised several legal arguments to contest the above calculation. First, it argues that Samaritan's payment of $377,320, resulting in a net payment of $363,688, made on August 26, 2005 should not be considered in calculating the Cabinet's liability under the state Medicaid regulation, 907 K.A.R. 1:015, because that payment was reported in an April 19, 2006 outpatient cost settlement letter that Samaritan did not appeal. According the Cabinet the August 26, 2005 payment was therefore "owed as a matter of law" and "appropriate by operation of law." (Resp. to Pl.'s Mot. for Summ. J. at 21, ECF 68). But that same cost settlement letter describes the cost settlement as "[t]entative." (Samaritan's Ex. G. at 1, ECF No. 66-8). The Cabinet fails to provide any further explanation or legal authority to support the idea that Samaritan's payment was "appropriate by operation of law." The Court is left

14

to infer that the Cabinet is arguing that Samaritan waived its right to contest the "tentative" cost settlement letter. If that is the Cabinet's argument, then the Court disagrees with the Cabinet's position, because a failure to appeal a "tentative" cost settlement does not rise to the level of waiver; that is, the relinquishment, with knowledge, of the legal right to contest the cost settlement amount. The Court is not persuaded that Samaritan waived its right to contest a cost settlement amount that was acknowledged to be tentative and thus not finally determined.[12]

The Cabinet also argues that there is a legal question about whether the then extant version of 907 K.A.R 1:015 should be applied at all, given the discrepancy between the state regulation and the Medicaid State Plan. According to the Cabinet, the reimbursement calculation methodology of the state regulation may be trumped by the State Plan's methodology due to "federalism concerns." The Court disagrees. A validly promulgated state rule has the force of law, and so will trump a State Plan that is not adopted in substantial compliance with the rulemaking requirements of a state's administrative procedures act. *See Women's & Children's Hospital v. State of La. Dep't of Health & Hospitals*, 984 So.2d 760, 771 (La. Ct. App. 2008).

Nor does res judicata bar relief for Samaritan here. Res judicata may apply where a claim has been decided on the merits, or where an issue was necessary to an underlying decision. *See, e.g.*, *Clemmer v. Rowan Water, Inc.*, 277 S.W.3d 633, 635 (Ky. Ct. App. 2009) (discussing doctrine of res judicata under Kentucky law). The Cabinet's administrative decision, now on appeal in state court, did not address the merits of the dispute between the parties. Likewise, the judgment rendered in the 2008 adversary proceeding in this Court did not address the underlying obligations of the parties, instead limiting itself to the conclusion that the automatic stay had not been violated. Therefore, the Court will recommend that the district court grant relief to Samaritan in the sum of $340,397.98.

---

[12] Use of the word "tentative" makes the April 19, 2006 cost settlement letter different from, for example, the April 11, 2007 decision letter, which stated that a review of the Cabinet's cost report indicated that $241,687 was owed to the Cabinet, not that there had been some "tentative" cost settlement. The 2007 letter contains a clearer expression that a binding determination had been made and that rights had to be asserted in an appeal in order to change the amount. By contrast, the word "tentative" indicates clearly that something is not final or conclusive.

## CONCLUSION

Based on the foregoing reasoning, the Plaintiff's Motion for Reconsideration is HEREBY DENIED IN PART and the Defendant's Motion for Summary Judgment is HEREBY GRANTED IN PART.  A separate Order consistent with the foregoing has been entered in accordance with Federal Rule of Bankruptcy Procedure 9021.  Furthermore, the Court recommends that the district court grant relief to Samaritan in the sum of $340,397.98.

Pursuant to Federal Rule of Bankruptcy Procedure 9033(a), the Clerk shall forthwith serve copies of this proposed findings of fact and conclusions of law on all parties by mail and note the date of mailing on the docket.

Joan A. Lloyd
United States Bankruptcy Judge
Dated:  August 18, 2014

16